IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Jonathan H. Horsfall,

               Debtor.

(Chapter 7)

Case No. 10-12596

First Weber Group, Inc.

               Plaintiff,

v.

Jonathan H. Horsfall

               Defendant.

Adv. No. 10-00179

MEMORANDUM DECISION

After a trial on April 13, 2011, I held that the debt owed to the plaintiff ("First Weber") was discharged. First Weber has appealed, and that appeal is pending. On May 14, 2011, the defendant filed a motion for sanctions under Bankruptcy Rule 9011(b). In turn, First Weber filed a Motion for Sanctions on May 31, 2011. A hearing was held August 24, 2011 to consider both sanctions motions.

The facts of the underlying dispute are set out in my Memorandum Decision, *First Weber Group, Inc. v. Jonathan H. Horsfall*, Case No. 10-00179 (April 26, 2011). While they provide useful background, they are not the basis of the present motions.

1

Throughout the trial, Attorney Moermond, counsel for First Weber,[1] asked redundant questions that were objected to as irrelevant. Nearly all the objections were sustained. Mr. Moermond was given numerous directives to limit the scope of his questions to the issue at trial, which he consistently failed to heed. He doggedly repeated his irrelevant questions. He frequently rolled his eyes. Though not fully audible, nor recorded, he made constant sotto voce comments (some vulgar) during the trial, which were heard by court staff and visitors to the courtroom. Attorney Moermond's conduct was rude, petulant, immature and disrespectful.

In its Motion for Sanctions under Bankruptcy Rule 9011, the defendant argues that the plaintiff filed its complaint for an improper purpose. The defendant contends that the allegation in the complaint that Jonathan H. Horsfall willfully and maliciously injured plaintiff "was without any evidentiary support whatsoever," and that the claim of nondischargeability was not warranted by law.

First Weber argues that the defendant's sanctions motion should be denied because it does not describe the specific conduct that allegedly violates Bankruptcy Rule 9011, and the motion itself is therefore baseless and frivolous. First Weber also moves for sanctions under Bankruptcy Rule 9011(b)(4), alleging that the defendant made and failed to amend repeated unwarranted denials in its Answer. First Weber contends that the denials were made despite clearly documented facts in the underlying record or in the defendant's own statements. First Weber's attorney emailed the defendant's attorney on December 13, 2010 to inform the defendant of the unwarranted denials of "numerous facts and documents which your client has, or which were found as facts, and which are in the State Court's file in the underlying Dane County Case." (Moermond Aff., Doc. 56-2, at 16.) It does not appear that the defendant's

---

[1] Mr. Moermond appears to be general counsel or in-house counsel for First Weber, and as such, an employee of First Weber.

2

attorney ever addressed the unwarranted denials. In its Summary Judgment Brief, First Weber pointed out various denials the defendant made in his Answer that First Weber believed were established (and thus, contradicted) by the defendant's Answer or Amended Answer, or were documented in another place. (Pl.'s Br. Supp. Mot. Summ. J., Doc. 24, at. 2-6.) First Weber now asks this court to sanction the defendant, alleging that the defendant's violation of Bankruptcy Rule 9011(b)(4) forced First Weber to undertake additional expense and created additional complexity and confusion on the record.

At the hearing on the motions for sanctions, I noted that although I had never had a more unpleasant day in court than the day this trial was held, the truculent conduct on the part of Attorney Moermond does not necessarily give rise to Rule 11 sanctions. That rule addresses some, but not all, offensive conduct.

In a brief filed after the sanctions hearing, the defendant pointed to the appellant brief that First Weber filed in the district court to argue that First Weber acknowledged it would not have received full commission had the deal originally closed. The defendant argues that First Weber therefore had no true economic motive for this litigation because First Weber received approximately the economic value of the transaction as a distribution from the bankruptcy estate in payment of its claim. The defendant further argues that since there was no true economic motive for this litigation, it must have been filed for an improper purpose – to harass and intimidate the defendant by forcing him to engage in expensive litigation. First Weber responded that the original deal did not close because the defendant left First Weber, so the defendant's hypothetical argument is irrelevant. First Weber contends that it commenced this adversary proceeding because it believes it is entitled to relief by virtue of the state court

judgment, and therefore, the bankruptcy court litigation was not pursued for an improper purpose.

**A. Defendant's Motion for Sanctions**

An attorney is subject to sanctions under Bankruptcy Rule 9011(b)[2] when he submits a petition, pleading, written motion or other paper to the court that falls into one of four categories:

> (1) the document was submitted for an improper purpose (i.e., to harass one's adversary or to delay or drive up the costs of litigation);
> (2) the claims contained in the document are frivolous because they lack support under existing law;
> (3) the allegations contained in the document lack evidentiary support or are unlikely to have evidentiary support upon further investigation; or
> (4) the denials in the document are unwarranted based on the evidence. Fed. R. Bankr. P. 9011(b)(1)-(4); *see also* Fed. R. Civ. P. 11(b)(1)-(4).

A motion for sanctions under Rule 9011 must "describe the specific conduct alleged to violate subdivision (b)." Fed. R. Bankr. P. 9011(c)(1)(A); *see also* Fed. R. Civ. P. 11(c)(2). However, on its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto. Fed. R. Bankr. P. 9011(c)(1)(B); *see also* Fed. R. Civ. P. 11(c)(3).

Once a court determines that a person violated Bankruptcy Rule 9011(b), it may impose an "appropriate sanction." The appropriateness of a sanction is judged by "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The rule itself provides for a variety of options, including "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted

---

[2] The language of Federal Rule of Civil Procedure 11 is virtually identical to Rule 9011. *In re Victoria*, 1993 U.S. Dist. LEXIS 20803 (E.D. Wis. June 9, 1993).

for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.*

A motion for sanctions under Bankruptcy Rule 9011 is subject to a 21-day safe harbor provision. *Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261, 269 (7th Cir. 2011). The safe harbor provision in Bankruptcy Rule 9011(c)(1)(A) requires the moving party to serve the opposing side with the motion and provide the opposing side with an adequate opportunity (21 days) to withdraw and correct the contested portions of the challenged paper, claim, defense, contention, allegation, or denial before the motion is presented to the court. In the Seventh Circuit, a court that imposes sanctions requested by motion without adhering to the twenty-one day "safe harbor" provision abuses its discretion. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). However, the Seventh Circuit Court of Appeals has also held that a letter informing opposing counsel of the possible imposition of Rule 11 sanctions adequately satisfied the safe harbor requirement. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 2011 U.S. App. LEXIS 15537, 552-53 (7th Cir. 2011). Here, the defendant and First Weber exchanged emails early in the case where they each implied they would file Rule 11 sanctions against the other party. Neither party has objected to the other's motion for sanctions on the ground that it violates the safe harbor provision. Both sanctions motions came at the conclusion of trial, and each party informed the other early in litigation that he may file sanctions. Therefore, the motions need not be denied on the basis of the safe harbor provision.

Turning to the relevant substantive requirements of the rule, under Bankruptcy Rule 9011(b)(1), the "improper purpose" prong, "the court's focus should be on what the party intended, and on what the party knew or should have known — both factually and legally — on the day the document was filed." *In re Snyder*, 2011 Bankr. LEXIS 630, *2 (Bankr. E.D. Wis.

5

Feb. 11, 2011). When determining whether the claim was supported in law or in fact, the proper inquiry is not whether the claim itself was frivolous, but whether the plaintiff conducted an adequate inquiry into the facts and the law before he filed the claim. *Matter of Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir. 1992) (citing *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989)).

The purpose of the sanctions remedy under Bankruptcy Rule 9011 is to discourage unnecessary filings, prevent the assertion of frivolous pleadings, and require good faith filings. *In re Firnhaber*, 2004 WL 2211686, *3 (Bkrtcy. S.D. Ill. 2004) (not reported) (citing *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987), *cert. dismissed*, 485 U.S. 901 (1988)). The rule is not intended to function as a fee shifting statute which would require the losing party to pay costs. *Id.* (citing *Mars Steel Corp.*, 880 F.2d at 932). Thus, the Rule focuses on the conduct of the parties and not on the results of the litigation. *Id.* For example, in *Firnhaber*, Judge Fines remarked that "[a]lthough the Court stated at close of trial on September 3, 2004, that this was the weakest case under 11 U.S.C. § 523(a)(15) that it had seen, the Court cannot find that sanctions are appropriate pursuant to Rule 9011(b)." *In re Firnhaber*, 2004 WL 2211686 at *4. The court found that there was insufficient evidence to establish that the complaint was filed for an improper purpose. *Id.* Judge Fines remarked that sanctions pursuant to Rule 9011(b) "cannot be entered lightly and must be reserved for only those circumstances where pleadings are clearly frivolous and a lack of good faith has been shown." *Id.*

While no court within the Seventh Circuit has imposed Rule 11 or Rule 9011 sanctions for reasons of an attorney's courtroom behavior, courts within this circuit have found this a basis for Rule 37 sanctions. Rule 37 requires attorneys to cooperate and make appropriate disclosures

6

during discovery. Courts may dismiss cases under Rule 37 "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1362 (7th Cir. Ill. 1989). In *Reytblatt*, an attorney willfully ignored direct court orders to make Rule 26(a) disclosures, and continuously refused to follow the Local Rules of the Northern District of Illinois, as the attorney believed the case was erroneously transferred from Connecticut to Illinois. *Reytblatt v. Illinois Inst. of Tech.*, 1999 U.S. Dist. LEXIS 4073, 7-8 (N.D. Ill. Mar. 19, 1999). The district court found that the attorney's "obdurate refusal to accede to this court's rulings is an inappropriate and unacceptable way for a litigant to act in a federal court." *Id*. at 9. In addition to this inappropriate conduct, the court found the attorney's behavior toward Magistrate Judge Rosemond to have been "utterly inappropriate." *Id*. at 19. The court remarked that plaintiff's treatment of Judge Rosemond – "yelling in court, accusing him of wrongdoing, threatening to drag him into court as a hostile witness - is contumacious." *Id*. The court found that dismissal was appropriate because "there is a clear record of delay or contumacious conduct [and] other less drastic sanctions have proven unavailing." *Id*. at 18 (quoting *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1362 (7th Cir. 1989)). "Delay or contumacious conduct" is not a standard that the Seventh Circuit Court of Appeals has used for Rule 11 sanctions.

Rule 11 motions are intended to "deter unnecessary filings, prevent the assertion of frivolous pleadings, and require good faith filings." *In re Firnhaber*, 2004 WL 2211686 at 3. In this case, the defendant does offer some evidence to establish that First Weber commenced this action for an improper purpose. But that evidence is scant, and a creditor's reasons for seeking to have a debt declared non-dischargeable in bankruptcy are generally self-evident. The defendant provides little evidence that First Weber filed the adversary proceeding without an

7

adequate inquiry into the facts and the law. Though the defendant argues that First Weber's alleged lack of economic motive can only mean that the original complaint was filed for an improper purpose, no authority supports this reason alone as a basis for Rule 11 sanctions. The defendant's oral argument and subsequently filed brief also fail to point to specific evidence of filing for an improper purpose. First Weber's case was weak, but that in itself is not enough to establish an improper purpose on the part of First Weber. Therefore, Rule 9011 sanctions are not appropriate.

Still, one could infer that First Weber did not do an adequate inquiry into the facts to support a "willful and malicious" injury under § 523(a)(6) before it commenced its adversary proceeding. Based on Attorney Moermond's Original Complaint and appellant brief, it appears that First Weber believed it would prevail on its motion for summary judgment based on the circuit court judgment that found the defendant liable for tortious interference with contract. The Original Complaint states § 523(a)(6) as a cause of action for nondischargeability, and it appears to rely heavily on the circuit court judgment as a basis for willful and malicious injury. Had Attorney Moermond done a more thorough search into the underlying law, it may have been clear that the case for willful and malicious injury was very weak. This inference may support the conclusion that First Weber did not adequately inquire whether it had a basis in law in fact before it initiated the adversary proceeding, but it also in part refutes the defendant's argument that the complaint was filed simply to harass the defendant. First Weber believed that it would prevail on its motion for summary judgment. Because these are tenuous inferences, the facts as they stand do not support that the pleadings were frivolous or filed for an improper purpose.

Finally, Attorney Moermond's conduct at trial may have been truculent and disrespectful and his competence in the courtroom inadequate, but this does not rise to the level of

8

Case 3-10-00179-rdm   Doc 75   Filed 11/17/11   Entered 11/17/11 16:02:37   Desc Main
Document      Page 9 of 16

inappropriateness that would warrant sanctions. His conduct was of the sort that is usually censured by social mores and discouraged by public (or private) embarrassment, not by legal sanctions. It is remarkable that neither he nor his client (a firm seemingly dependent on favorable public image) were not sufficiently self-controlled nor embarrassed enough to modify the shameful performance. Unlike the Rule 37 case described above, Attorney Moermond was not yelling at the court and blatantly disobeying direct orders from the court. His inappropriate behavior, while reprehensible, is not enough to trigger Rule 9011 sanctions.

## B. First Weber's Motion for Sanctions

In its motion, First Weber first argues that the defendant's motion for sanctions should be denied because it does not describe the specific conduct that allegedly violates Bankruptcy Rule 9011, and the motion is therefore baseless and frivolous. A bankruptcy court can impose sanctions when a party files a frivolous motion for sanctions. *In re Hasek*, 1997 WL 1050829, 7 (N.D. Ill. 1997) (not reported) (citing *In re Express America, Inc.*, 132 B.R. 542 (Bankr. W.D. Pa. 1991)). In *In re Hasek*, Judge Ginsberg found grounds for sanctions because, "despite the requirements of Rule 9011, [the party] made no inquiry into the reasonableness of his actions and advanced no credible evidence or argument in support of his motion for sanctions against [the nonmovant]." *Id.* In this case, the defendant may have filed his motion for sanctions without giving any evidence in support of his motion, but he later gave support for it in oral argument and a brief. While the defendant's support is unpersuasive, it is not frivolous. First Weber's case was weak, and Attorney Moermond's conduct at trial was egregious enough for the court to put its displeasure on the record. Therefore, the defendant's motion for sanctions was not frivolous, and sanctioning the defendant for filing the motion for sanctions is not warranted.

First Weber also seeks sanctions, alleging that the defendant made and failed to amend repeated unwarranted denials in its Answer. Under Bankruptcy Rule 9011, when a party files a pleading, it is certifying to the court that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." Fed. R. Bankr. P. 9011(b)(4). Case law addressing Rule 9011(b)(4) motions is limited. In this case, First Weber notified the defendant's attorney of the alleged unwarranted denials in the defendant's Answer on December 13, 2010. (Moermond Aff., Doc. 56-2, at 16.) Attorney Moermond informed the defendant's attorney that the denial of certain facts in the Answer were found as facts by the State Court or that the defendant acknowledged as facts, and it does not appear that the defendant's responded to these deficiencies. *Id.* The defendant's attorney certainly had actual notice of these deficiencies, but First Weber did not file this motion for sanctions until the conclusion of the trial. There is no way the defendant can remove and correct the specific pleadings that First Weber contends violated Bankruptcy Rule 9011(b)(4).

While post-judgment motions for sanctions are allowed in the Seventh Circuit, they still must comply with the procedural requirements. The defendant's post-judgment motion for sanctions was appropriate because the defendant claims the whole case was filed for an improper purpose. The court of appeals has found that in circumstances where "the lack of evidentiary support for defendant's counterclaim could not have been determined until trial was completed," the interest in deterring further frivolous post-judgment motions by the same litigants or in deterring future litigants may be promoted by a post-judgment request for sanctions. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. Ill. 1999). Unlike the defendant's motion for sanctions, which was appropriately brought after judgment, First Weber's motion to strike specific pleadings from the answer should have been brought in the early stages of litigation

10

when the defendant would have been able to make changes to the pleadings. Filing a sanctions motion in reaction to the opposing party's non-frivolous sanctions motion is not appropriate. First Weber's motion for sanctions must be denied.

## C. Other Bases for Sanctions

### 1. Authority under 11 U.S.C. § 105, 28 U.S.C. § 1927

11 U.S.C. § 105 gives bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under § 105, a bankruptcy court may take "any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." While the court's power under this statute is broad, a sanctioning court must exercise caution when invoking this power, and should ordinarily rely on available authority conferred by statutes and procedural rules if the available sources of authority would be adequate. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123 (1991).

28 U.S.C. § 1927 provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Courts are split on whether bankruptcy courts have authority to impose sanctions under § 1927. See *In re Jazz Photo Corp.*, 312 B.R. 524, 541 & n.26 (Bankr. D. N.J. 2004). The authority to issue sanctions is not a core proceeding under § 157, but courts may issue sanctions related to matters that are core proceedings. *See Volpert v. Ellis, (In re Volpert)*, 177 B.R. 81, 89 (Bankr. N.D. Ill. 1995).

The Seventh Circuit Court of Appeals tentatively supports a bankruptcy court's imposition of § 1927 sanctions. In 1985, the court of appeals affirmed this court's decision to impose fees under § 1927. *In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985). Judge Easterbrook noted that "Judge Martin had the authority to award the fees incurred right from the beginning." *In re TCI, Ltd.*, 769 F.2d at 448. However, in affirming this decision, the court of appeals did not discuss whether § 1927 applies to bankruptcy courts. *Matter of Volpert*, 110 F.3d 494, 497 (7th Cir. 1997). In *Volpert v. Ellis*, Judge Schmetterer held that a bankruptcy court as a judicial officer of the district court may impose § 1927 sanctions as to a matter within its core or related jurisdiction. *Volpert v. Ellis, (In re Volpert)*, 177 B.R. 81, 88-89 (Bankr. N.D. Ill. 1995). On appeal, the district court took the view that bankruptcy courts are not "court[s] of the United States" under 28 U.S.C. § 151, but nevertheless held that bankruptcy courts are empowered as a unit of the district court to impose sanctions under § 1927. *Matter of Volpert*, 110 F.3d at 496.

The Seventh Circuit Court of Appeals declined to explicitly affirm the imposition of sanctions under § 1927. *Id.* at 501. The court concluded that bankruptcy courts can impose sanctions under § 1927 only if they can exercise the powers that are conferred upon the "court[s] of the United States or any Territory thereof." *Id.* at 497. The court of appeals held that the language of § 105 gives bankruptcy courts ample authority to sanction conduct that abuses the judicial process, including conduct that unreasonably and vexatiously multiplies bankruptcy proceedings. *Id.* at 501. This holding in *Volpert* was authoritative until *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000). In *Adair*, the court of appeals stated in a footnote that a bankruptcy judge could sanction an attorney under authority of 28 U.S.C. § 1927. *Id.* at 895 & n.8. However, the opinion relied on *Volpert* as precedent, making it unclear if a bankruptcy court's

authority to sanction for vexatiously multiplying proceedings stems from 28 U.S.C. § 1927 or 11 U.S.C. § 105. *Id.*

The United States Supreme Court's recent holding in *Stern v. Marshall* curtailed bankruptcy court jurisdiction, and may move circuit courts in the direction of allowing bankruptcy courts to issue orders only in matters that are clearly core. *Stern v. Marshall*, 131 S. Ct. 2594, 2601 (2011). The implications of this decision remain to be determined by the Seventh Circuit courts.

While the *Stern* decision may have had an impact on the way courts interpret a bankruptcy court's authority to issue sanctions under § 1927, the holding does not directly affect the issues in this case. Unlike § 157(b)(2)(C), § 1927 arguably does not "confer Article III power on a bankruptcy court" because it only references "courts of the United States," which, depending on the interpretation, may not include bankruptcy courts. The question is whether bankruptcy courts have erroneously exercised authority to sanction attorneys when § 1927 arguably does not allow them to do so. This issue has not come before the Seventh Circuit Court of Appeals post-*Stern*, and the law in the Seventh Circuit as it currently stands is that bankruptcy courts may impose § 1927 sanctions through its authority under § 105. Therefore, if § 1927 sanctions are warranted, this court may impose them.

2. Application

Attorneys may be sanctioned under § 1927 if they unreasonably and vexatiously multiply proceedings in any case. 28 U.S.C. § 1927. This statute permits a party to recoup fees and costs when an attorney acts in an objectively unreasonable manner and with either subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992); *Alexander v. United States*, 121 F.3d 312, 316 (7th Cir.1997) (holding that sanctions are also appropriate

when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist.); *see, e.g., Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987) (indicating that intentional ill will or reckless conduct constitutes vexatious conduct).

While § 1927 sanctions are penal in nature and should be construed strictly, sanctions may be warranted when counsel displays laxity in prosecuting the adversary proceeding or drags out the pleadings process, "thus causing more expensive litigation, and obstructed discovery." *In re Kitchin*, 327 B.R. 337, 368-69 (Bankr. N.D. Ill. 2005). The principle underlying § 1927 is that in a system requiring each party to bear its own costs and fees, courts must ensure that each party really does bear the costs and does not foist expenses off on its adversaries. *Id.* at 372 (citing *In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985)). When a party recklessly creates needless costs, the other side is entitled to relief. *Id.*

In *Volpert*, the appellant repeatedly filed untimely responsive proceedings and repeatedly failed to give notice of pleadings to opposing counsel. *Id.* at 495. The court of appeals noted that the appellant did not dispute that, for six months, he unreasonably and vexatiously multiplied the proceedings before the bankruptcy court. *Id.* at 500. Even absent that concession, the bankruptcy court determined independently that the appellant's conduct in the case at bar "could only be described as an abuse of the judicial process." *Id.* (citing *Volpert v. Ellis (In re Volpert)*, 177 B.R. at 91). The bankruptcy court found that the appellant "flagrant[ly] disregard[ed] ... the Federal Rules of Civil Procedure," ... "reflect[ed] contempt for the law, the Court, and opposing counsel," and ..."bedeviled opposing counsel with studied misconduct obviously intended to harass him and avoid proper service upon him." *Id.* The court concluded that "the ability to prevent the type of behavior exhibited in this case is necessary if the

14

bankruptcy courts are to carry out efficiently and effectively the duties assigned to them by Congress." *Id.*

In this case, Attorney Moermond unreasonably prolonged the trial by repeatedly asking irrelevant questions despite the Federal Rules of Evidence and the court's directives. This caused countless objections and delays throughout the trial. However, prolonging a trial is not the same as vexatiously multiplying proceedings, and therefore, this alone does not warrant sanctions under § 1927. Attorney Moremund also questioned the court's ruling on the objections, and argued after being told to move on to another question. He also made many sotto voce comments and behaved in a disrespectful manner. This conduct may constitute "contempt for the law, the court, and opposing counsel." Given his unprofessional conduct and flagrant disregard for the Federal Rules of Evidence, there may be a basis to impose § 1927 sanctions. However, in the aggregate, his conduct does not fall squarely within the type that § 1927 is trying to prevent. Weighing the circumstances as a whole, sanctions are not appropriate in this case.

While the conduct in this case does not warrant sanctions, the attorneys must be reminded to observe the Seventh Circuit's Standards for Professional Conduct.[3] Two predominant standards outlined by the Seventh Circuit Court of Appeals are as follows:

### Lawyers' Duties to Other Counsel

1. We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a

---

[3] Standards for Professional Conduct Within the Seventh Federal Judicial Circuit *available at*: http://www.ca7.uscourts.gov/rules/rules.htm.

15

civil and courteous manner, not only in court, but also in all other written and oral communications.

### Lawyers' Duties to the Court

1. We will speak and write civilly and respectfully in all communications with the court.

The attorneys here should further be reminded of the Preamble to the Standards for Professional Conduct: that conduct "should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms." Lawyers should refrain from conduct that is "uncivil, abrasive, abusive, hostile, or obstructive," as any conduct of this type tends to "delay and often deny justice." The Court of Appeals for the Seventh Circuit expects judges and lawyers to make a mutual and firm commitment to these standards, which encourage us to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service.

For the reasons outlined above, both motions for sanctions are DENIED. It will be so ordered.

Dated: November 17, 2011

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE